IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LEE LOCKE,<br>        Plaintiff )<br>         )<br>         v. )<br>         )<br>SUPERINTENDENT RAYMOND J. )<br>SOBINA, )<br>        Defendant. ) | C.A. 10-66 Erie<br><br>Magistrate Judge Baxter |

**OPINION AND ORDER**

United States Magistrate Judge Susan Paradise Baxter.

## I. INTRODUCTION

### A. Relevant Procedural and Factual History

On March 18, 2010, Plaintiff James Lee Locke, a prisoner formerly incarcerated at the State Correctional Institution at Albion, Pennsylvania ("SCI-Albion"),[1] filed this *pro se* civil rights action pursuant to 42 U.S.C. § 1983 against Raymond Sobina, former Superintendent at SCI-Albion. Plaintiff alleges that his rights under the eighth amendment to the United States Constitution and the Americans with Disabilities Act were violated because he was allegedly denied access to a restroom on several occasions between August 2009 and January 2010. (ECF No. 4, Complaint, at Sections III and IV.C). In particular, Plaintiff alleges that he was forced to urinate in a cup on three occasions, and on one such occasion also urinated in his pants. (Id. at Section IV.C.7, 12). As relief for his claims, Plaintiff seeks injunctive relief and compensatory and punitive damages.

---

[1] Plaintiff is currently incarcerated at the State Correctional Institution at Forest in Marienville, Pennsylvania.

On July 9, 2010, Defendant filed a motion to dismiss [ECF No. 15], asserting that Plaintiff has failed to exhaust his administrative remedies, and in any event, has failed to state a claim upon which relief may be granted. Plaintiff has since filed a memorandum of law in opposition to Defendant's motion. This matter is now ripe for consideration.[2]

### B. Standard of Review

#### 1. Motion to Dismiss

A motion to dismiss filed pursuant to Federal Rule of Civil Procedure 12(b)(6) must be viewed in the light most favorable to the plaintiff and all the well-pleaded allegations of the complaint must be accepted as true. Erickson v. Pardus, 551 U.S. 89, 93-94 (2007). A complaint must be dismissed pursuant to Rule 12 (b)(6) if it does not allege "enough facts to state a claim to relief that is plausible on its face." Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)(rejecting the traditional 12 (b)(6) standard set forth in Conley v. Gibson, 355 U.S. 41 (1957)). See also Ashcroft v. Iqbal, ___ U.S. ___, ___, 129 S.Ct. 1937 (May 18, 2009) (specifically applying Twombly analysis beyond the context of the Sherman Act).

The Court need not accept inferences drawn by plaintiff if they are unsupported by the facts as set forth in the complaint. See California Pub. Employee Ret. Sys. v. The Chubb Corp., 394 F.3d 126, 143 (3d Cir. 2004) citing Morse v. Lower Merion School Dist., 132 F.3d 902, 906 (3d Cir. 1997). Nor must the court accept legal conclusions set forth as factual allegations. Twombly, 550 U.S. at 555, citing Papasan v. Allain, 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level." Twombly, 550 U.S. at 555. Although the United States Supreme Court does "not require heightened fact pleading of specifics, [the Court does require] enough facts to state a claim to relief that is

---

[2] The parties have consented to having a United States Magistrate Judge exercise jurisdiction over this matter. [ECF Nos. 2 and 21].

2

plausible on its face." Id. at 570.

In other words, at the motion to dismiss stage, a plaintiff is "required to make a 'showing' rather than a blanket assertion of an entitlement to relief." Smith v. Sullivan, 2008 WL 482469, at *1 (D.Del. February 19, 2008) quoting Phillips v. County of Allegheny, 515 F.3d 224, 231 (3d Cir. 2008). "This 'does not impose a probability requirement at the pleading stage,' but instead 'simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence of' the necessary element." Phillips, 515 F.3d at 234, quoting Twombly, 550 U.S. at 556.

The Third Circuit subsequently expounded on the *Twombly/Iqbal/Phillips* line of cases, as follows:

> To prevent dismissal, all civil complaints must now set out "sufficient factual matter" to show that the claim is facially plausible. This then "allows the court to draw the reasonable inference that the defendant is liable for the alleged misconduct."
>
> * * *
>
> [A]fter *Iqbal*, when presented with a motion to dismiss for failure to state a claim, district courts should conduct a two-part analysis. **First, the factual and legal elements of a claim should be separated. The district court must accept all of the complaint's well-pleaded facts as true, but may disregard any legal conclusions. Second, a district court must then determine whether the facts alleged in the complaint are sufficient to show that the plaintiff has a "plausible claim for relief." In other words, a complaint must do more than allege the plaintiff's entitlement to relief.** A complaint has to "show" such an entitlement with its facts. As the Supreme Court instructed in *Iqbal*, "[w]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' - 'that the pleader is entitled to relief.'" This "plausibility" requirement will be a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.

Fowler v. UPMC Shadyside, 578 F.3d 203, 210-11 (3d Cir. 2009)(emphasis added)(citations omitted).

### 2. *Pro Se* Pleadings

*Pro se* pleadings, "however inartfully pleaded," must be held to "less stringent standards than formal pleadings drafted by lawyers" Haines v. Kerner, 404 U.S. 519, 520 (1972). If the court can reasonably read pleadings to state a valid claim on which the litigant could prevail, it should do so despite failure to cite proper legal authority, confusion of legal theories, poor syntax and sentence construction, or litigant's unfamiliarity with pleading requirements. See Boag v. MacDougall, 454 U.S. 364 (1982); United States ex rel. Montgomery v. Brierley, 414 F.2d 552, 555 (3d Cir. 1969)("petition prepared by a prisoner... may be inartfully drawn and should be read 'with a measure of tolerance'"); Freeman v. Department of Corrections, 949 F.2d 360 (10th Cir. 1991). Under our liberal pleading rules, a district court should construe all allegations in a complaint in favor of the complainant. Gibbs v. Roman, 116 F.3d 83 (3d Cir.1997)(overruled on other grounds). See, e.g., Nami v. Fauver, 82 F.3d 63, 65 (3d Cir. 1996)(discussing Fed.R.Civ.P. 12(b)(6) standard); Markowitz v. Northeast Land Company, 906 F.2d 100, 103 (3d Cir. 1990)(same). Because Plaintiff is a *pro se* litigant, this Court will consider facts and make inferences where it is appropriate.

## II. DISCUSSION
### A. Exhaustion
#### 1. Exhaustion Requirement of the Prison Litigation Reform Act

The Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e(a), provides:
> no action shall be brought with respect to prison conditions under section 1983 of this title ... by a prisoner confined in any jail, prisons, or other correctional facility *until such administrative remedies as are available are exhausted*.

Id. (Emphasis added).

The requirement that an inmate exhaust administrative remedies applies to all inmate suits regarding prison life, including those that involve general circumstances as well as particular episodes. Porter v. Nussle, 534 U.S. 516 (2002). See also Concepcion v. Morton,

306 F.3d 1347 (3d Cir. 2002) (for history of exhaustion requirement). Administrative exhaustion must be completed prior to the filing of an action. McCarthy v. Madigan, 503 U.S. 140, 144 (1992). Federal courts are barred from hearing a claim if a plaintiff has failed to exhaust all the available remedies. Grimsley v. Rodriquez, 113 F.3d 1246 (Table), 1997 WL 2356136 (Unpublished Opinion) (10th Cir. May 8, 1997).[3] The exhaustion requirement is not a technicality, rather it is federal law which federal district courts are required to follow. Nyhuis, 204 F.3d at 73 (by using language "no action shall be brought," Congress has "clearly required exhaustion"). There is no "futility" exception to the administrative exhaustion requirement. Ahmed v. Dragovich, 297 F.3d 201, 206 (3d Cir. 2002) citing Nyhuis, 204 F.3d at 78.

According to the U.S. Supreme Court, the PLRA requires "proper exhaustion," meaning that a prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines. Woodford v. Ngo, 548 U.S. 81, 126 S.Ct. 2378, 2387-2388 (June 22, 2006) ("Proper exhaustion demands compliance with an agency's deadlines and other critical procedural rules ..."). Importantly, the exhaustion requirement may not be satisfied "by filing an untimely or otherwise procedurally defective ... appeal." Id.

A plaintiff need not affirmatively plead exhaustion, but exhaustion is an affirmative defense which is waived if not properly presented by a defendant. Ray v. Kertes, 285 F.3d 287 (3d Cir. 2002) (holding that "no provision of the PLRA requires pleading exhaustion with particularity," while construing the PLRA requirements in light of the Supreme Court decision in Swierkiewicz v. Sorema, N.A., 534 U.S. 506 (2002)). It is the burden of a defendant asserting

---

[3] Importantly, a plaintiff's failure to exhaust his administrative remedies does not deprive the district court of subject matter jurisdiction. Nyhuis v. Reno, 204 F.3d 65, 69 n.4 (3d Cir. 2000) ("...[W]e agree with the clear majority of courts that § 1997e(a) is *not* a jurisdictional requirement, such that failure to comply with the section would deprive federal courts of subject matter jurisdiction.").

the defense to plead and prove it.  Id.

### b. Procedural Default Component

The United States Court of Appeals for the Third Circuit has explicitly held that the exhaustion requirement of the PLRA includes a procedural default component, by analogizing it to the exhaustion doctrine (with its corollary procedural default component) in the habeas context. Spruill v. Gillis, 372 F.3d 218, 228-229 (3d Cir. 2004).[4]  The Circuit explained:

> We believe that Congress's policy objectives will be served by interpreting § 1997e(a)'s exhaustion requirement to include a procedural default component. Based on our earlier discussion of the PLRA's legislative history, [...] Congress seems to have had three interrelated objectives relevant to our inquiry here: (1) to return control of the inmate grievance process to prison administrators; (2) to encourage development of an administrative record, and perhaps settlements, within the inmate grievance process; and (3) to reduce the burden on the federal courts by erecting barriers to frivolous prisoner lawsuits. Each of these goals is better served by interpreting § 1997e(a)'s exhaustion language to include a procedural default component than by interpreting it merely to require termination of all administrative grievance proceedings.

Id.  Having concluded that the PLRA includes a procedural default component, the Court then indicated that "prison grievance procedures supply the yardstick for measuring procedural default." Id. at 231.

To exhaust the administrative remedies within the DOC's grievance system, a grievance must be appealed through all administrative levels of appeal at the inmate's institution and the DOC  inmate-initiated grievances must follow the procedures set forth in Administrative Directive 804 ("DC-ADM 804"), which is included as part of the inmate handbook distributed to each inmate.  The first step in the grievance process is for the inmate to file a claim with the

---

[4] There is a split of authority among the Circuits on this issue.  Compare Berry v. Kerik, 366 F.3d 85 (2d Cir. 2004), Ross v. County of Bernalillo, 365 F.3d 1181 (10th Cir. 2004), and Pozo v. McCaughtry, 286 F.3d 1022 (7th Cir. 2002), with Thomas v. Woolum, 337 F.3d 720 (6th Cir. 2003).

institution's grievance officer. The grievance officer will investigate a grievance and provide the inmate with an Initial Review Response, which includes "a brief rationale, summarizing the conclusions and any action taken or recommended to resolve the issues raised in the grievance." DC-ADM 804 VI(B)(4). If the inmate is not satisfied with the Initial Review Response, there are two levels of appeal he must pursue to exhaust his claim: (1) an appeal within five days of his receipt of the Initial Review Response to the prison superintendent and, if the appeal is denied, (2) an appeal to the DOC Secretary's Office of Inmate Grievances and Appeals ("DOC Secretary"). DC-ADM 804 VI(C)(1).

### c. Exhaustion and Procedural Default Applied

Defendant contends that Plaintiff has failed to exhaust his administrative remedies with regard to his claims. In support of this contention, Defendant has submitted the Declaration of Keri Moore, an Administrative Officer 2 in the DOC's Office of Inmate Grievances and Appeals, who declares, in pertinent part, as follows:

> 10. I have reviewed the grievance records of Inmate James Locke, JA-5305, in relation to the above captioned case. That search revealed that, while in the custody of the Department of Corrections at SCI-Albion, Plaintiff filed nine (9) grievances, but that he has not appealed any grievances to Final Review.

(ECF No. 16-1, Moore Declaration, at ¶ 10).

Plaintiff has acknowledged that the only grievance he filed that is relevant to this proceeding was denied on September 28, 2009, because he attempted to file the grievance on behalf of other inmates, as well as himself. (See, ECF No. 22, Plaintiff's Memorandum, at p. 6; ECF No. 4, Complaint, at p. 7). Nonetheless, Plaintiff argues that his failure to appeal this denial should be excused because "[d]ue to [his] mental capacity at the time [he] filed the grievance and it was denied for filing a grievance on behalf of other inmates, [he] was not capable to comprehend that there was more [he] could of [sic] done." (ECF No. 22, Plaintiff's Memorandum, at p. 6). Plaintiff goes on to explain that he suffered a traumatic brain injury in a

7

motor vehicle accident that occurred on January 26, 2008, which left him in a coma for a period of time and has impaired his cognitive abilities. (Id.; ECF No. 4, Complaint, at p. 5). The record in this case is not developed enough for this Court to determine whether Plaintiff's alleged mental impairment may have contributed to his failure to exhaust his administrative remedies. In light of the uncertainty regarding this issue at this stage of the proceeding, the Court is unwilling to dismiss this case based upon Plaintiff's failure to exhaust administrative remedies. As a result, the Court will proceed to the merits of Plaintiff's claims.

### B. Eighth Amendment Claim

To succeed on an Eighth Amendment claim based on prison conditions, a plaintiff must show "he has suffered an objectively, sufficiently serious injury, and that prison officials inflicted the injury with deliberate indifference." Farmer v. Brennan, 511 U.S. 825, 834 (1994) An objectively, sufficiently serious injury is one that denies the inmate "the minimal civilized measure of life's necessities," such as food, clothing, shelter, and medical care. Rhodes v. Chapman, 452 U.S. 337, 347 (1981); see also Tillman v. Lebanon County Correctional Facility, 221 F.3d 410, 419 (3d Cir. 2000); Young v. Quinlan, 960 F.2d 351, 364 (3d Cir. 1992)(holding that, at a minimum, correctional institutions must provide inmates with "adequate food, clothing, shelter, sanitation, medical care, and personal safety"). Furthermore, to establish deliberate indifference: 1) a prison official must know of and disregard an excessive risk to inmate health or safety; 2) the official must be aware of facts from which an inference could be drawn that a substantial risk of serious harm exists, and 3) the official must also draw the inference. Farmer, 511 U.S. at 837.

Isolated instances of deficient and uncomfortable conditions do not constitute cruel and unusual punishment. Roach v. Kligman, 412 F.Supp. 521, 527 (E.D.Pa. 1976)(confinement in a "cold and leaky" cell for short period of time does not violate Eighth Amendment). See also Chapman v. Doe, 1988 WL 124894 at *1 (E.D.Pa. Nov. 23, 1988)(dismissing as frivolous

8

Eighth Amendment claim based on lack of cleaning materials and proper food for period of twelve days); Morrison v. Clark, No. 84-4688 (E.D.Pa. Feb. 27, 1985)(confinement in unclean, insect-infested cell for two days does not violate Eighth Amendment). See also Burkholder v. Newton, 116 Fed. Appx. 358, 363 (3d Cir. 2004)("it is questionable if having a cold cell or a toilet that backs up sometimes is really an 'atypical and significant hardship ... in relation to the ordinary incidents of prison life'").

Here, Plaintiff complains that he was denied access to the bathroom on several occasions during his confinement in the "front dorm" at SCI-Albion from August 2009 to January 2010. (ECF No. 4, Complaint, at Section IV.A-C). In particular, Plaintiff recounts seven instances that allegedly occurred over a five week span in August and September 2009:

1. On August 19, 2009, Plaintiff was denied access to the bathroom for approximately four and one-half hours (Id. at Section IV.C.1-3);

2. On August 20, 2009, he was refused access to the restroom during a block move at 2:55 p.m. Plaintiff does not specify how long he was required to wait to gain access (Id. at Section IV.C.4);

3. On August 27, 2009, he was required to wait 30 minutes before he was allowed access to the restroom (Id. at Section IV.C.5);

4. On August 28, 2009, corrections officers refused to unlock the door to the restroom for him at 1:12 p.m. (Id. at Section IV.C.6);

5. On the morning of September 2, 2009, the first shift denied him access to the bathroom and, "after holding it for a few minutes, [he] was forced to urinate in [his] drinking cup in front of 6 other inmates," and then, after his drinking cup filled up, he urinated on himself (Id. at Section IV.C.7);

6. From 11:32 p.m. on September 5, 2009, to 12:47 a.m. on September 6, 2009, the third shift officer was not on Plaintiff's unit to allow access to the restroom, causing Plaintiff to urinate in his drinking mug (Id. at Section IV.C.10-11); and

7. On September 22, 2009, during a recount at 6:00 p.m., Plaintiff was forced to urinate in his drinking mug. (Id. at Section IV.C.12).

It is evident from the foregoing allegations that Plaintiff was intentionally denied access

9

to the bathroom for an extended period of time on only one occasion - August 19, 2009, when he was required to wait approximately four and one-half hours. Yet, Plaintiff fails to allege any adverse consequences as a result of this extended wait, and the wait itself, although presumably uncomfortable, was not so extensive as to implicate a constitution violation. See, e.g., Heitschmidt v. City of Houston, 161 F.3d 834, 837-38 (5th Cir. 1998)(complete prohibition on use of toilet cannot amount to a constitutional violation where it lasts only four hours); Owens v. Padilla, 2008 WL 3916068, at *4 (N.D.Cal. Aug. 22, 2008)("Plaintiff's confinement in the barbershop room without a toilet for approximately six hours... would not, without more, implicate the Eighth Amendment")(citations omitted).

The next longest period of time Plaintiff was allegedly prevented from accessing the bathroom occurred during the late night and early morning hours of September 5-6, 2009, when the third shift officer was absent from Plaintiff's unit. Although Plaintiff alleges that this incident forced him to urinate in his drinking mug, he fails to allege that the officer's absence from his unit was deliberately aimed at denying him access to the bathroom. As a result, the allegations regarding this incident fail to implicate an Eighth Amendment violation.

The remaining incidents simply do not rise to the level of constitutional violations, individually or cumulatively. See Revels v. Vincenz, 382 F.3d 870, 875 (8th Cir. 2004) ("the momentary deprivation of the right to use the bathroom, in the absence of physical harm or a serious risk of contamination, does not rise to the level of an Eighth Amendment violation); Knop v. Johnson, 977 F.2d 996, 1013 (6th Cir. 1992)(holding that inmates' being required to urinate occasionally in their cells when officers were unavailable to take them to the toilet did not violate the Eighth Amendment); Vacca v. Scott, 119 Fed.Appx. 678, 679 (5th Cir. 2005) (finding that, although plaintiff averred that defendants acted with deliberate indifference in denying him access to a bathroom, at most he alleged that he suffered generalized pain and discomfort, which is insufficient to state an Eighth Amendment violation); Abdur-Reheem-X v. McGinnis, 198 F.3d 244 (6th Cir. Nov. 12, 1999)("the Eighth Amendment does not require that

prisoners enjoy immediately available and flushable toilets); Whitted v. Lazerson, 1998 WL 259929, at *2 (S.D.N.Y. May 21, 1998) (stating that the alleged violation was not objectively serious where the inmate was continually told he had to wait a few minutes to go to the toilet and the inmate ultimately urinated on himself after waiting an hour and a half).

Based on the foregoing, therefore, Plaintiff has failed to state a constitutional claim upon which relief may be granted and this case will be dismissed.

An appropriate Order follows.


                                              SUSAN PARADISE BAXTER
                                              United States Magistrate Judge


Dated:        February __, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| JAMES LEE LOCKE,<br>   Plaintiff<br><br>  v.<br><br>SUPERINTENDENT RAYMOND J. SOBINA,<br>   Defendant. | C.A. 10-66 Erie<br><br>Magistrate Judge Baxter |

## **ORDER**

AND NOW, this 8th day of March, 2011,

IT IS HEREBY ORDERED as Defendant's motion to dismiss [ECF No. 15] is

GRANTED. The Clerk is directed to mark this case closed.

                 s/Susan Paradise Baxter
                SUSAN PARADISE BAXTER
                United States Magistrate Judge